**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| S.P. JULIE KEOVILAY, | : | |
| plaintiff, | : | |
| v. | : | CASE NO. 3:19-cv-0735(RAR) |
| NANCY A. BERRYHILL,[1]<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY, | : | |
| defendant. | : | |

**<u>RULING ON PENDING MOTIONS</u>**

S.P. Julie Keovilay ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated March 18, 2019.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. #19-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #20-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is DENIED and the Commissioner's motion to affirm is GRANTED.

---

[1] Andrew Saul is the new Commissioner of Social Security and has been added as a party to this action automatically.

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on December 23, 2015.  (R. 245.)[4]  Plaintiff alleged a disability onset date of June 1, 2011.[5]  (R. 258.)  At the time of application, plaintiff alleged that she suffered from bipolar disorder, personality disorder, diabetes, chronic

---

Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  Id.

[4] The Court cites pages within the administrative record as "R. ___."

[5] Plaintiff's application summary incorrectly notes plaintiff's onset date as January 1, 2010.  (R. 245.)  Plaintiff's application lists June 1, 2011 as her onset date.  (R. 258.)

neck and back pain, limb numbness and spinal stenosis. (R. 91–92.) The initial application was denied on March 4, 2016, and again upon reconsideration on October 4, 2016. (R. 130–140, 142–152). Plaintiff then filed for an administrative hearing which was held by ALJ John Aletta (hereinafter the "ALJ") on May 17, 2018. (R. 44–90.) The ALJ issued an unfavorable decision on June 13, 2018. (R. 20–37.) Plaintiff filed a request for review with the Appeals Council on July 25, 2018. (R. 241–244.) The Decision Review Board denied plaintiff's request for review on March 18, 2019. (R. 1–4, 13.) Plaintiff then filed this action seeking judicial review. (Dkt. #19-2.)

## DISCUSSION

Plaintiff asserts that the ALJ failed to develop the record; improperly evaluated her claims of pain and her obesity; and that the ALJ's step five findings are unsupported by substantial evidence. (Pl. Br. 1, 2, 5.) Based on the following, the Court finds that the ALJ did not fail to develop the record, improperly evaluate plaintiff's pain or her obesity, and that the ALJ's step five determinations are supported by substantial evidence. The Court therefore affirms.

### I. The ALJ Did Not Fail to Develop the Record

Plaintiff asserts that the ALJ failed to develop the record by not requesting opinions from her treating physicians, Advanced Practice Registered Nurse ("APRN") Melissa Amicone, Dr.

David Marks, Physician Assistant ("PA-C") Ajit Mathew, and Dr. Brian Peck. (Pl. Br. 1-2.) The Court disagrees.

An ALJ has an affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015). "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts, 94 F.3d at 37-38).

A court must remand "where 'the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate' the claimant." Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)). "The record is insufficient when '[t]he medical records discuss [the claimant's] illnesses and suggest treatment for them, but offer no insight into how [the] impairments affect or do not affect [the claimant's] ability to work, or [his] ability to undertake the activities of daily life.'" Martinez,

6

2019 WL 1199393, at *11 (alterations in original) (quoting
Guillen, 697 F. App'x at 109).

However, "remand is not always required when an ALJ fails
in his duty to request opinions, particularly where, as here,
the record contains sufficient evidence from which an ALJ can
assess the petitioner's residual functional capacity." Tankisi
v. Comm'r of Soc. Sec., 521 Fed. Appx. 29, 33–34 (2d Cir. 2013).
The ALJ is not required to acquire an opinion from the
plaintiff's treating source where the ALJ's opinion is
consistent with a consultative examiner and "the ALJ also [has]
all of the treatment notes from" the plaintiff's treating
physician.  Pellam v. Astrue, 508 Fed. Appx. 87, 89–90 (2d Cir.
2013).

Plaintiff argues that there was an obvious gap in the
record due to the lack of opinions from plaintiff's various
treating physicians, APRN Amicone, Dr. Marks, PA-C Mathew, and
Dr. Brian Peck.  Plaintiff asserts that no medical opinions
reference plaintiff's physical limitations and thus, the ALJ was
obligated to request medical source statements regarding her
physical limitations.  The Court disagrees.

First, the Court rejects plaintiff's argument that the ALJ
was required to obtain medical source statements from PA-C
Mathew and Dr. Peck.  Plaintiff's date of last insured is
September 30, 2016.  (R. 22.)  Therefore, plaintiff must

establish disability prior to September 30, 2016.  Monette v.
Colvin, 654 Fed. Appx. 516, 517 n.1 (2d Cir. 2016).  However,
plaintiff did not begin treatment with PA-C Mathew and Dr. Peck
until April of 2017.  As such, they are not considered treating
physicians.  Monette v. Astrue, 269 Fed. Appx. 109, 112–13 (2d
Cir. 2008).  Their opinions, while perhaps relevant, are not
entitled to the same level of value or deference.  Id. at 113.

Further, the ALJ was obligated to develop the record for
the 12 months prior to plaintiff's application for social
security disability benefits and possibly earlier if the facts
and circumstances require it.  20 C.F.R. § 404.1512(b)(1).  In
order to complete plaintiff's medical history, the Social
Security Administration "will develop [the plaintiff's] complete
medical history for the 12-month period prior to the month [the
plaintiff was] last insured for disability insurance benefits."
Id. (emphasis added).  The C.F.R. creates no similar duty for
the ALJ to develop the record after the relevant period by
seeking medical source statements from later treating
physicians.  See id.  Plaintiff does not cite any case law
suggesting such a duty.  Finally, plaintiff does not assert that
these opinions would be retrospective and demonstrate that she
was disabled prior to September 30, 2016.  (Pl. Br. 1–11.)  As
such, the ALJ did not err by failing to request medical source
statements from PA-C Mathew or Dr. Peck.

Second, plaintiff takes issue with the ALJ's failure to request medical source statements from Dr. Marks and APRN Amicone.

The regulations make clear that while the Commissioner "will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete." 20 C.F.R. § 404.1519n. However, the Commissioner "will not request a consultative examination until [she has] made every reasonable effort to obtain evidence from [the claimant's] own medical sources." 20 C.F.R. § 404.1512.

Dr. Marks treated plaintiff at the PCA Pain Care Center ("PCA"). Plaintiff was treated at PCA from April 2015 to September 2016. (R. 912, 1354.) APRN Amicone treated plaintiff from December 2013 to at least March 2017. (R. 581, 1478.) The ALJ did not request medical source statements from Dr. Marks or APRN Amicone, but rather, relied on the opinions of the state agency consultants and a consultative examination. (R. 32–33.) The regulations make clear that the ALJ was to make "every reasonable effort to obtain evidence from [plaintiff's] own medical sources." 20 C.F.R. § 404.1512. The ALJ's failure to request medical source statements from APRN Amicone, Dr. Marks, or any of the other physicians plaintiff saw at First Choice

Health Centers and PCA Pain Care Center was clearly in violation of 20 C.F.R. § 404.1512.  However, remand is not necessary.

A court must remand "where 'the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate' the claimant." Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)).  "The record is insufficient when '[t]he medical records discuss [the claimant's] illnesses and suggest treatment for them, but offer no insight into how [the] impairments affect or do not affect [the claimant's] ability to work, or [his] ability to undertake the activities of daily life.'" Martinez, 2019 WL 1199393, at *11 (alterations in original) (quoting Guillen, 697 F. App'x at 109).

Plaintiff asserts that there is an obvious gap in the record because the medical records do not demonstrate what plaintiff's treating physicians thought of her conditions.  (Pl. Br. 7.)  However, the Court assesses whether the record was sufficient that the ALJ could determine the plaintiff's functional limitations, not her physicians' opinions about them. See Martinez, 2019 WL 1199393, at *11.  Plaintiff's standard is inconsistent with Second Circuit case law and would necessarily

require an opinion from all of plaintiff's treating sources, regardless of the sufficiency of the medical evidence.

While the record contains no analysis by plaintiff's treating physicians, there was an opinion by an examining source and the medical records demonstrate how plaintiff's impairments affected her ability to work and undertook activities of daily life.

The ALJ noted that plaintiff admitted to her physicians that she walks her dog for up to an hour in the morning and an hour at night, walks three to four times a week, performed household chores, and cared for her boyfriend's disabled mother. (R. 446, 458, 465, 1166, 1224, 1279, 1361.)  Plaintiff also moved in with her mother to care for puppies that had just been born.  (R. 455.)  Plaintiff complains that she unable to finger, but Dr. Dodenhoff noted that plaintiff was able to retrieve her ID from her purse without any difficulty.  (R. 1280.)  Finally, plaintiff told Dr. Dodenhoff that her primary care physician and neurosurgeon stated she could perform desk work.  (R. 1285.)

The above referenced medical records offer insight on how plaintiff's impairments affect her ability to work and undertake activities of daily life.  The records establish that plaintiff was capable of walking for long distances and caring for others and animals.  The medical records were therefore sufficient for

the ALJ to assess plaintiff's physical limitations and determine that there was not an obvious gap in the record.

Therefore, there was not an obvious gap in the record although there were no opinions from plaintiff's treating sources examining her physical limitations.  As a result, the ALJ did not fail to develop the record.

## II.  The ALJ's RFC Determination is Supported by Substantial Evidence

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  An individual's residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

### a.  The ALJ Properly Evaluated Plaintiff's Pain

Plaintiff asserts that the ALJ improperly evaluated her assertions of pain.  (Pl. Br. 11.)  Plaintiff asserts that the ALJ improperly rejected her assertions of pain without medical evidence demonstrating that her claims were false.  (Pl. Br. 11.)  The Court disagrees.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations.  At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c).  While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence.  Id. at § 404.1529(c)(2).

At step one, the ALJ determined that plaintiff suffered from the following severe impairments, which could reasonably be

expected to produce her alleged symptoms: rheumatoid arthritis,
degenerative disc disease of the cervical spine and lumbar
spine; degrative joint disease of the bilateral knees; right
carpal tunnel release procedure; tenosynovitis of the right
middle and ring fingers status-post right finger pully release
procedure; left carpal tunnel syndrome; and obesity.  (R. 23,
31.)  At step two, the ALJ found that plaintiff's "statements
concerning the intensity, persistence and limiting effects of
[her] symptoms [were] not entirely consistent with the medical
evidence and other evidence in the record."  (R. 31.)

     The ALJ determined that plaintiff's symptoms were
inconsistent with the record based on the medical evidence,
plaintiff's activities of daily living, and her failure to
comply with medical treatment.  (R. 31-34.)  Plaintiff asserted
that she had difficulties standing or walking for long periods
and is unable to lift things, do the dishes or get out of bed
due to pain.  (R. 55, 58.)  Plaintiff asserts that she is unable
to work as a result.  (R. 55.)

     As the ALJ noted, plaintiff admitted to her physicians that
she walks her dog for up to an hour in the morning and an hour
at night, walks three to four times a week, performed household
chores, and cared for her boyfriend's disabled mother.  (R. 446,
458, 465, 1166, 1224, 1279, 1361.)  Plaintiff also moved in with
her mother to care for newborn puppies.  (R. 455.)  Plaintiff

14

complains that she unable to finger, but Dr. Dodenhoff noted
that plaintiff was able to retrieve her ID from her purse
without any difficulty.  (R. 1280.)  Finally, plaintiff told Dr.
Dodenhoff that her primary care physician and neurosurgeon
stated she was capable of performing desk work.  (R. 1285.)

The ALJ further noted that while plaintiff stated that
treatment had been effective in improving her pain, she was
discharged from physical therapy for non-attendance and non-
compliance.  (R. 32, 861.)  Plaintiff's physician, APRN
Williams, was also concerned plaintiff was misusing her
medication.  (R. 1361.)  Ebert v. Berryhill, No. 3:16-CV-
1386(WIG), 2018 WL 3031852, at *7 (D. Conn. June 19,
2018)("Here, the record indicates that Plaintiff did not
complete physical therapy, and went for a year without mental
health treatment at the VA . . . . The ALJ properly considered
this evidence in finding it contradicted Plaintiff's allegations
as to the intensity of his symptoms.").

Although plaintiff asserts that she cannot lift anything,
that state agency consultant, Dr. Rittner, stated that she could
frequently lift up to 10 pounds and occasionally up to 20
pounds.  (R. 103.)  The state agency consultants further opined
that plaintiff could walk and stand up to six hours in an eight-
hour workday, contrary to her assertion that walking had become
too painful.  (R. 103, 122.)  Dr. Golkar, another state agency

consultant, opined even fewer limitations.  Dr. Golkar opined
that plaintiff could frequently lift up to 25 pounds and
occasionally up to 50 pounds.  (R. 122.)

Finally, the ALJ noted that although plaintiff complained
of significant pain in her right hand, causing an inability to
finger, her medical records demonstrated normal finger motion
bilaterally, full range of wrist motion, an intact ability to
make a fist, and full strength.  (R. 867, 872, 877, 881, 885,
889, 893, 897, 901, 905, 909, 913, 1232.)  Plaintiff
additionally had a full range of motion in her spine, a normal
gait, and normal strength in her upper extremities, despite
complaints of pain.  (R. 426, 540, 546, 549, 572, 592–93, 595,
783, 868, 873, 878, 971, 974, 977, 980.)

Plaintiff does not suggest there is not substantial
evidence supporting the ALJ's determination.  Rather, plaintiff
asserts that because there is evidence supporting her alleged
symptoms, the ALJ was required to accept her allegations as
true.  (Pl. Br. 11–12.)  Plaintiff is incorrect.

"As a fact-finder, the ALJ has the discretion to evaluate
the credibility of a claimant and to arrive at an independent
judgment, in light of medical findings and other evidence."
Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d
1035, 1042 (2d Cir. 1997).  "'Under the substantial evidence
standard of review, it is not enough for Plaintiff to merely

disagree with the ALJ's weighing of the evidence . . . Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.'" <u>Lillis v. Colvin</u>, No. 3:16-cv-269(WIG), 2017 WL 784949, at *5 (D. Conn. Mar. 1, 2017) (quoting <u>Hanson v. Comm'r of Soc. Sec.</u>, No. 315-CV-0150GTS(WBC), 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), report and recommendation *adopted sub nom.* <u>Hanson v. Colvin</u>, No. 315-CV-150GTS(WBC), 2016 WL 3951150 (N.D.N.Y. July 20, 2016)).

There is substantial evidence to support the ALJ's determination that plaintiff's alleged intensity, persistence and limiting effects of her symptoms were inconsistent with the record.  As such, because the ALJ followed the two-step process for evaluating plaintiff's complaint of pain and his determination was supported by substantial evidence, the ALJ did not improperly evaluate plaintiff's allegations of pain.

### b. The ALJ Properly Evaluated Plaintiff's Obesity

Plaintiff argues that the ALJ improperly evaluated her obesity.  Plaintiff argues that in order to properly evaluate the effect of her obesity, the ALJ was required to obtain an opinion by a treating physician.  (Pl. Br. 14.)  Plaintiff also argues that the ALJ failed to recognize the impact her obesity may have had on her other impairments, including those which the ALJ determined were nonsevere.  (Pl. Br. 13.)

The Court rejects plaintiff's argument that the ALJ did not consider the effect of plaintiff's obesity.  The ALJ first stated that plaintiff's obesity was a severe impairment and then stated that her obesity could reasonably be expected to exacerbate plaintiff's symptoms.  (R. 23, 33.)

Similarly, the Court rejects plaintiff's argument that an ALJ is required to obtain an opinion from a treating physician whenever the plaintiff is obese.  As detailed above, the lack of an opinion from plaintiff's treating source does not render a record incomplete.  Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)).  As already highlighted by the Court, there was not an obvious gap in the record and thus the ALJ did not err by failing to obtain opinions from plaintiff's treating physicians.

Further, the ALJ properly examined plaintiff's obesity.  "[T]he ALJ is required to consider the effects of obesity in combination with other impairments throughout the five-step evaluation process."  Crossman v. Astrue, 783 F. Supp. 2d 300, 309 (D. Conn. 2010).

> Obesity alone can also be a "medically equivalent listed impairment" if it "results in an inability to ambulate effectively."  Id.  At steps four and five, the  ALJ must evaluate obesity in conjunction with claimant's residual functional capacity by assessing the "effect obesity has

upon the individual's ability to perform routine movement
and necessary physical activity within the work
environment." Id.; see also Rockwood v. Astrue, 614 F.
Supp. 2d 252, 275-278 (N.D.N.Y. 2009); Orr v. Barnhart, 375
F. Supp. 2d 193, 199 (W.D.N.Y. 2005).

Crossman, 783 F. Supp. 2d at 309.

In Duprey, the Court found that the ALJ properly examined

the effect of plaintiff's obesity as it related to plaintiff's

anxiety. Duprey v. Berryhill, No. 3:17CV00607(SALM), 2018 WL

1871451, at *14 (D. Conn. Apr. 19, 2018). The ALJ stated,

> [a]lthough obesity itself is not a listed impairment, the
> undersigned has considered the potential effects obesity
> has in causing or contributing to impairments in the
> musculoskeletal, respiratory, and cardiovascular system and
> that the combined effects of obesity with other impairments
> can be greater than the effects of each of the impairments
> considered separately.

Id. (internal quotation marks omitted).

The court further determined the ALJ was not required to

explain how the plaintiff's obesity may have affected her other

impairments. Id. Additionally, any potential error was

harmless because the plaintiff failed to present any argument

discussing how plaintiff's obesity in combination with her other

impairments would have affected the ALJ's analysis. Id.

Here, the ALJ noted plaintiff's high BMI and noted that her

"obesity could be reasonably expected to limit her exertional

abilities and exacerbate the symptoms from her other physical

conditions." (R. 33.) As in Duprey, the ALJ did not

specifically mention plaintiff's mental impairments.  It is sufficient that "the ALJ considered all of plaintiff's impairments in combination 'throughout the disability determination process.'"  Duprey, 2018 WL 1871451, at *14 (quoting Brault v. SSA, 683 F.3d 443, 448 (2d Cir. 2012)).

While the ALJ did not specifically reference plaintiff's Borderline Personality Disorder[6] ("BPD") when examining plaintiff's symptoms, this was not an error.  The ALJ made it sufficiently clear that he considered all of plaintiff's impairments in combination throughout the disability determination process.  (R. 30.)  The ALJ therefore properly examined plaintiff's obesity.

Further, plaintiff offers no evidence or explanation as to how her obesity affected her BPD and therefore the ALJ's RFC determination.  Thus, any potential error is harmless.  Duprey, 2018 WL 1871451, at *14.

### c. The ALJ's RFC Determination is Affirmed

Plaintiff has failed to establish that the ALJ erred in his determination that her RFC was not diminished by her claims of persistent pain and obesity.  As stated earlier in this opinion,

---

[6] Plaintiff asserts that the ALJ failed to address and analyze plaintiff's BPD. (Pl. Br. 14.)  Plaintiff offers this assertion in three conclusory sentences at the end of her argument that the ALJ improperly examined her obesity. (Pl. Br. 14.)  The ALJ examined plaintiff's BPD and found it was nonsevere.  (R. 24.)  The Court thus rejects this assertion.

the Court has already found that the ALJ's determination on this matter is supported by substantial evidence.  Without proof of legal error or a lack of substantial evidence, the Court shall affirm the ALJ's RFC determination.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

## III. The ALJ's Step Five Findings are Supported by Substantial Evidence

Plaintiff argues that the ALJ's findings at step five are unsupported by substantial evidence. (Pl. Br. 15.) Plaintiff asserts that the ALJ improperly relied on the testimony of vocational expert James Miller as Mr. Miller did not cite any sources supporting his testimony. (Pl. Br. 16-17.) The Court disagrees.

At Step Five, the Commissioner must determine whether significant numbers of jobs exist in the national economy that the plaintiff can perform. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the

claimant involved." Id. (internal citations omitted)
(alterations in original) (quoting Dumas v. Schweiker, 712 F.2d
1545, 1553-54 (2d Cir. 1983)) (citing Aubeuf v. Schweiker, 649
F.2d 107, 114 (2d Cir. 1981)).

A vocational expert's failure to provide the scientific
data supporting his or her conclusion as to the number of jobs
available in the national economy may still be supported by
substantial evidence. Biestek v. Berryhill, 139 S. Ct. 1148,
1157 (2019). "The inquiry, as is usually true in determining
the substantiality of evidence, is case-by-case. It takes into
account all features of the vocational expert's testimony, as
well as the rest of the administrative record." Id. While the
refusal to present scientific data may or may not affect the
credibility of the expert's testimony, the analysis "defers to
the presiding ALJ, who has seen the hearing up close." Id.

The vocational expert's credentials, history of testimony,
her ability to answer the ALJ and attorney's questions, and the
alleged basis for her testimony are all relevant in providing
substantial evidence for her opinion. See id. at 1155.

The Second Circuit has held that "a vocational expert is
not required to identify with specificity the figures or sources
supporting his conclusion, at least where he identified the
sources generally." McIntyre, 758 F.3d at 152. "[T]he ALJ
[may] reasonably credit[] [a vocational expert's] testimony,

which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record." Id.

In Crespo, the vocational expert identified available jobs based on a hypothetical person's limitations and the number of such available jobs in the national economy. Crespo v. Comm'r of Soc. Sec., No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *8 (D. Conn. Sept. 25, 2019). The ALJ relied on the vocational expert's testimony despite his failure to identify the source of the number of jobs. Id. The plaintiff's counsel examined the vocational expert and did not challenge the qualifications of the expert or ask about the number of jobs available. Id. The Court determined that "the vocational expert's failure to identify the sources of her job-numbers data does not dispel the existence of substantial evidence for the ALJ's conclusion that Crespo could perform a substantial number of jobs that existed in the national economy." Id. at *9.

The facts presented here are almost identical to those in Crespo. The ALJ relied on Mr. Miller's testimony despite his failure to provide a source for his testimony. (R. 35-36.) However, unlike Crespo, the ALJ did confirm with Mr. Miller that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (R. 78, 85.) Plaintiff's counsel did not object to Mr. Miller's qualifications or to the testimony

regarding the number of jobs, during the hearing.  <u>See</u> (R. 74, 77-78, 84-85.)  As in <u>Crespo</u>, Mr. Miller's failure to provide a source for the number of jobs in the economy does not "dispel the existence of substantial evidence."  <u>Crespo</u>, 2019 WL 4686763, at *9.

The ALJ properly relied on the testimony of the vocational expert.  Therefore, the Court rejects plaintiff's argument that the step five determination is not supported by substantial evidence *per se*.  Plaintiff has failed to demonstrate that the ALJ's RFC determination is not supported by substantial evidence of that the vocational expert's testimony was in error.  As such, the ALJ's step five findings are supported by substantial evidence.

<u>**CONCLUSION**</u>

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #19-2) is DENIED and the Commissioner's motion to affirm that decision (Dkt. #20-1) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  <u>See</u> <u>28 U.S.C. § 636(c)(3).</u>

SO ORDERED this 15th day of July 2020, at Hartford,

Connecticut.

                                      _____/s/__ ___ _____
                                        Robert A. Richardson
                                        United States Magistrate Judge